**Nancy Jewell CROSS, for herself and for all persons like interested, Plaintiff,**

v.

**March FONG EU, Secretary of State of California, Defendant.**

**No. C–76–1988–WWS.**

United States District Court, N. D. California.

April 8, 1977.

Nancy Jewell Cross, in pro. per.

Evelle J. Younger, Atty. Gen., Clayton P. Roche, Charlton G. Holland, III, Deputy Attys. Gen., San Francisco, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT WITH PREJUDICE

WILLIAM W SCHWARZER, District Judge.

Plaintiff, on behalf of herself and others similarly situated, seeks a declaration that certain sections of the California Elections Code are unconstitutional on their face and as applied to her. She has previously sought to gain ballot listing as a candidate for the office of United States Senator in the November 1976 General Election.[1] This Court has entered orders: (1) denying plaintiff's motion for a temporary restraining order and/or preliminary injunction; (2) dismissing plaintiff's first amended complaint with leave to amend; and (3) ordering the clerk of this Court not to enter default against defendant.

Plaintiff has filed a second amended complaint, and defendant has again moved to dismiss. Plaintiff has filed her opposition to the motion to dismiss and a motion to vacate this Court's order not to enter default and to strike the motion to dismiss. Upon a review of plaintiff's complaint and the motion papers, the Court has determined that plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.Proc. Moreover, since plaintiff has already been permitted an opportunity to amend and no purpose would be served by a further amendment, the complaint will be dismissed with prejudice.

The complaint alleges that plaintiff requested on February 16, 1976, nomination papers for the office of United States Senator from the San Mateo County Clerk. It further alleges that the clerk refused to issue such nomination papers "on the ground, solely, that plaintiff's registration as a voter lacked an oath or declaration that plaintiff belonged to one of four private political parties."[2] (Doc. # 17, ¶ 9, p. 4) The complaint further alleges that she again demanded nomination papers (apparently this time for the November 1976 General Election) from the San Mateo County Clerk on July 30, 1976, such demand includ-

---

1. This Court's jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(3) and (4). All statutory references in this opinion are to the California Elections Code. Cited sections appear in the Appendix accompanying the opinion.

2. This allegation clearly does not state a claim, constitutional or otherwise. At the time plaintiff's request was made, the clerk was apparently processing nominations for the *primary* election. Section 6401 of the California Elections Code, both at that time and as amended shortly thereafter, required a prospective candidate in California's primary election to be affiliated with the "political party the nomination of which he seeks". The purpose of a primary election is to narrow the field of candidates to one per party in order that the general election might be reserved for major struggles, not intraparty feuds. *Storer v. Brown*, 415 U.S. 724, 735, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). Plaintiff was not prejudiced when she was refused papers for the primary since she was not a party candidate. She retained the opportunity under California law (Elections Code §§ 6800, et seq.) to be listed on the general election ballot as an independent candidate and compete for the office she sought with surviving party candidates. Therefore, her allegations regarding alleged denial of primary election access do not state a claim. Cf., *Storer v. Brown, supra*, 415 U.S. 733–37, 94 S.Ct. 1274 (1974).

ing the condition that papers be provided "without fee or work alternative to a fee." (Doc. # 17, ¶ 10, p. 4) A deputy clerk responded that forms could be issued only upon payment of a fee of $892.50 or upon presentation of a petition with 10,000 signatures. (Id.) [3]

The complaint reveals that plaintiff subsequently returned a petition bearing 234 signatures, 217 of which were found sufficient by the clerk. Although plaintiff had not met the 10,000 signature requirement, the clerk nonetheless issued plaintiff independent nomination papers. Plaintiff returned the forms with 100 signatures, 93 of which were found sufficient, and was denied ballot listing because of failure to comply with § 6831, which requires signatures of not less than 1% of the number of registered voters in California at the close of the preceding general election. It is not disputed that plaintiff's signatures were far below the required number. Defendant represents that the appropriate number of registered voters was 9,982,115, resulting in a 1% requirement of 99,821 signatures for independent ballot listing. (Doc. # 21, pp. 4–5)

Pared of rhetoric, the complaint asserts that the California election scheme violates the Equal Protection Clause in the following respects: (1) the filing fee constitutes wealth and sex discrimination; (2) the signatures alternative to the filing fee discriminates in favor of party candidates and against independent candidates; and (3) provisions requiring filing of a declaration of candidacy and a specified number of signatures before write-in votes will be counted likewise discriminate against non-party candidates.

Plaintiff's challenge of the filing fee of $892.50 is plainly without merit. As the Supreme Court held in Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974) in sustaining a constitutional challenge to predecessor statutes of §§ 6551, 6552 and 6554:

> "[I]n the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay." 415 U.S. 718, 94 S.Ct. 1321. (Emphasis added.)

California has amended its election statutes since Lubin to provide an alternative means of ballot access—a candidate may obtain ballot access by demonstrating the seriousness of his candidacy as measured by specified numbers of voter signatures on a petition supporting him. §§ 6555; 6831. If this alternative is a reasonable one, plaintiff has no constitutional claim against the filing fee.[4] Lubin v. Panish, supra; Bullock v. Carter, 405 U.S. 134, 149, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). The reasonableness of the alternative is the subject of plaintiff's second claim, which the Court will now examine.

In Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), the Supreme Court considered the constitutionality of the predecessor of the California independent nomination scheme challenged by plaintiff herein. Two of the plaintiffs in that case, Hall and Tyner, claimed the right to ballot position as independent candidates for President and Vice President of the

---

**3.** The clerk's response was consistent with the provisions of the California Elections Code, which had then recently been amended by emergency measure, presumably to resolve any constitutional doubts created by Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), before the 1976 election. § 6802 of the Code incorporates not inconsistent provisions of Chapter 5 of § 6400 et seq. (a chapter dealing with the direct primary) into the provisions for independent nominations for the general election. § 6552(a), as incorporated, requires candidates for the office of United States Senator to pay a filing fee of 2% of the first year salary for that office. It is not disputed that the $892.50 fee allegedly mentioned by the clerk is 2% of a Senator's salary. § 6555(a)(3) excuses the filing fee upon submission of a petition containing the signatures of 10,000 registered voters.

**4.** Moreover, even in the absence of an alternative, plaintiff has not shown or alleged that she is indigent and incapable of paying the filing fee. The failure to make such a showing undermines any reliance she might have on Lubin v. Panish, supra.

United States. Although the court did not hold the scheme unconstitutional, it remanded for reconsideration in light of further facts to be developed in the district court.[5] California law required Hall and Tyner to present a petition signed by voters not less in number than 5% of the total votes cast in California at the last general election. The court had previously approved a Georgia independent nomination requirement of 5% of the registered voters at the last general election for the office in question. *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

The Court did not have difficulty with the 5%-of-total-votes-cast requirement in the abstract, but was concerned that the interaction of (1) a provision disqualifying all registered voters who voted in the primary from signing the independent's petition; and (2) a provision limiting the time for obtaining signatures to 24 days between the primary and general election, would make the 5% requirement impossible or unreasonably difficult to meet. The Court stated:

> We are quite sure, therefore, that further proceedings should be had in the District Court to permit further findings with respect to the extent of the burden imposed on independent candidates for President and Vice President under California law. Standing alone, gathering 325,000 signatures in 24 days would not appear to be an impossible burden. Signatures at the rate of 13,542 per day would be required, but 1,000 canvassers could perform the task if each gathered 14 signers a day. On its face, the statute would not appear to require an impractical undertaking for one who desires to be a candidate for President. *But it is a substantial requirement; and if the additional likelihood is, as it seems to us to be, that the total signatures required will amount to a substantially higher percentage of the available pool than the 5% stipulated in the statute, the constitutional claim asserted by Hall is not frivolous.*

Before the claim is finally dismissed, it should be determined whether the available pool is so diminished in size by the disqualification of those who voted in the primary that the 325,000-signature requirement, to be satisfied in 24 days, is too great a burden on the independent candidates for the offices of President and Vice President. 415 U.S. 740, 94 S.Ct. 1284. (Emphasis added.)

In apparent response to *Storer*, the California Legislature passed a series of emergency measures, effective for the November 1976 elections (and, therefore, at the time plaintiff was seeking general ballot position as an independent candidate). In contrast to the provisions dealt with in *Storer*, the 1976 law contains the following principal features: (1) independent access to the general election ballot for a state-wide office may be attained upon presentation of a petition signed by *1% of the registered voters* at the close of registration before the preceding general election; § 6831; (2) independent candidates have *up to 60 days* in which to obtain the signatures; §§ 6555(b) and 6833; and (3) *persons voting in the primary may sign independent nomination papers*—the only limitation is that the signer sign only one paper for the same office, § 6834. Thus, the 1976 amendments address the concerns of the Supreme Court in *Storer* in a more than adequate fashion. A 5% requirement is changed and reduced to 1%; 24 days are extended to 60 days; restrictions on signers are all but eliminated. The sum and substance of these changes made it possible for an independent candidate to be listed on the ballot in 1976 (and compete with candidates who had survived state-wide primary elections) by obtaining roughly 100,000 signatures in a two-month period. This is approximately 1,700 signatures a day and could be achieved with only 100 canvassers obtaining 17 signatures each. The California scheme is thus eminently reasonable in view of the state's interest in avoiding a "laundry list" ballot by requiring prospective independent

---

**5.** No further reported action has been taken in the district court.

candidates to demonstrate the seriousness of their candidacy. *Lubin v. Panish, supra,* 415 U.S. 709, 715–716, 94 S.Ct. 1315, 1320. As the Court commented in that case:

> In *Bullock v. Carter,* 405 U.S. 134, [92 S.Ct. 849, 31 L.Ed.2d 92] (1972), we recognized that the State's interest in keeping its ballots within manageable, understandable limits is of the highest order. *Id.,* at 144–145, [92 S.Ct. 849, 856.] The role of the primary election process in California is underscored by its importance as a component of the total electoral process and its special function to assure that fragmentation of voter choice is minimized. That function is served, not frustrated, by a procedure that tends to regulate the filing of frivolous candidates. *A procedure inviting or permitting every citizen to present himself to the voters on the ballot without some means of measuring the seriousness of the candidate's desire and motivation would make rational voter choices more difficult because of the size of the ballot and hence would tend to impede the electoral process. That no device can be conjured to eliminate every frivolous candidacy does not undermine the State's effort to eliminate as many such as possible.*

> That "laundry list" ballots discourage voter participation and confuse and frustrate those who do participate is too obvious to call for extended discussion. The means of testing the seriousness of a given candidacy may be open to debate; the fundamental importance of ballots of reasonable size limited to serious candidates with some prospects of public support is not. Rational results within the framework of our system are not likely to be reached if the ballot for a single office must list a dozen or more aspirants who are relatively unknown or have no prospects of success. 415 U.S. 709, 94 S.Ct. 1315. (Emphasis added.)

In view of the considerations discussed above, the California 1% scheme is reasonably calculated to further the state's legitimate interest in ballot management; is not unduly burdensome for candidates; and is valid on its face.

■■■ The particular facts of plaintiff's situation do not vitiate the California scheme as applied to her. Plaintiff sought nomination papers for the office of United States Senator without tendering a filing fee. She was initially required to obtain 10,000 signatures before she could be issued papers; she produced only 217. Plaintiff's complaint purports to attack the 10,000 signature initial requirement on the ground that certain party candidates needed only 150 signatures. Compare § 6555(a)(3) and § 6555(a)(6). Her attack is unfounded. First, plaintiff does not have standing to challenge § 6555 because she was not injured by its operation. The clerk accepted her 217 signatures; waived the 10,000 requirement; and issued the nomination papers. She was denied listing only because she did not comply with the 1% requirement of § 6831. Second, assuming plaintiff could obtain standing, the 10,000 requirement is a reasonable alternative to the filing fee requirement of § 6552, *Lubin v. Panish,* and discussion *supra.* The fact that some qualified <u>party</u> candidates may obtain nomination papers with fewer signatures does not deny plaintiff, an independent candidate, equal protection. Qualified parties must poll 2% of the vote at a preceding election or present evidence by declarations of political affiliation or petition of substantial public support, more substantial than any showing required by an independent. Compare § 6430 with § 6831. Moreover, only the party candidate who wins his party's primary appears on the ballot. §§ 6610 and 6861. Thus, the distinction between the signatures required of party candidates and independents is a reasonable one. Cf. *American Party of Texas v. White,* 415 U.S. 767, 780–90, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) (upholding Texas election scheme which imposed a 1% of the vote support requirement on minor parties but none on major parties, i. e., those which had received major voter support at the last election). In sum, California's 10,000 and 1% signature requirements for independent candidates who do not choose to pay a filing

fee are reasonable and were reasonably applied to plaintiff.[6]

Plaintiff's third and final discernable claim[7] attacks the counting requirement for writ-in candidates appearing in § 57. That section mandates that persons desiring to have write-in votes cast for them counted by the Secretary of State file a declaration of candidacy and the number of signatures required by § 6495. In the case of a candidate for United States Senate, the minimum number of signatures required is 65. Plaintiff's attack on this provision is frivolous. California clearly has a legitimate governmental interest in conserving its vote counting resources sufficient to require a bare minimum showing of candidate interest before votes are counted. § 6495 imposes no significant burden and can be easily satisfied by plaintiff or anyone else seeking to mount a write-in campaign.

 Both on its face and as applied to plaintiff, the 1976 California election laws are well within the parameters of legitimate state interest in election control. Since plaintiff's second amended complaint

6. Indeed, plaintiff's situation illustrates well the state's legitimate policy interest underlying these requirements. If every person who could obtain 200–300 signatures received a place on a state-wide ballot, political chaos would ensue and rational voter choice would be impossible.

7. The loose narrative style and string citations of statutes in the complaint makes it difficult to isolate specific claims. The Court has thoroughly examined the allegations of the complaint and the statutes challenged (e. g., § 6920 requiring a candidate to file a simple affidavit) and finds no merit to any of plaintiff's claims therein.

8. In addition to opposing the motion to dismiss, plaintiff has moved the court to vacate its sua sponte order dated March 7, 1977, not to enter default; to enter default against defendant for her failure to answer or move within 10 days after service of the second amended complaint, Rule 15(a), Fed.R.Civ.Proc.; and to strike the motion to dismiss. Plaintiff argues that the clerk should have been allowed to enter default on her application. Rule 55(a), Fed.R.Civ.Proc. While plaintiff is correct regarding the rules for entry of default (as opposed to default judgment), the fact remains, as stated in the March 7, 1977, order, plaintiff *failed to inform defendant* that she was applying for default, despite the fact that defendant had consistently ap-

does not state a claim and plaintiff has not shown how a further amendment could do so, her complaint must be dismissed with prejudice.[8]

For the reasons stated above and good cause appearing:

IT IS HEREBY ORDERED that plaintiff's second amended complaint be and hereby is dismissed with prejudice.

## APPENDIX

### CALIFORNIA ELECTIONS CODE SECTIONS EFFECTIVE FOR THE NOVEMBER 1976 ELECTIONS

#### *DIRECT PRIMARY ELECTIONS*

(Ballot access sections of the direct primary elections chapter are incorporated as requirements for independent candidates seeking to enter the general election by § 6802, *infra*.)

§ 6401. Party affiliation

No declaration of candidacy for a partisan office or for membership on a county central committee shall be filed, either by

peared herein. Rule 5(a), Fed.R.Civ.Proc.; Local Rule 12(b). The Court's purpose in entering its order was to ensure that defendant did receive notice of untimeliness and that all parties be spared unnecessary proceedings to set aside the default.

Even assuming that plaintiff is correct in her contention that this Court does not have the authority to enforce the Federal Rules of Civil Procedure and Local Rules requiring notice and proof of service on defendant, plaintiff has not been prejudiced. If default had been entered as requested by plaintiff, this Court would have authority to set it aside "for good cause shown." Rule 55(c), Fed.R.Civ.Proc. The Court finds such good cause in: (1) defendant's prompt response after being informed of default; (2) the short period of time defendant was in default—some 11 days; (3) the importance of the public issue in this case—the validity of the California Elections Code; and (4) the obvious merit of defendant's position as evidenced by the Court's decision to grant the motion to dismiss. 6 Moore's *Federal Practice*, § 55.10[1] and [2] (discretion of Court to set aside default where there is a good defense on the merits). In view of the importance of the issues in this case, the Court's decision should turn on the merits, not on procedural niceties.

the candidate himself or by sponsors on his behalf, (1) unless at the time of presentation of the declaration and continuously for not less than three months immediately prior to that time, or for as long as he has been eligible to register to vote in the state, the candidate is shown by his affidavit of registration to be affiliated with the political party the nomination of which he seeks, and (2) the candidate has not been registered as affiliated with a qualified political party other than that political party the nomination of which he seeks within 12 months immediately prior to the filing of the declaration.

The county clerk shall attach a certificate to the declaration of candidacy showing the date on which the candidate registered as intending to affiliate with the political party the nomination of which he seeks, and indicating that the candidate has not been affiliated with any other qualified political party for the 12-month period immediately preceding the filing of the declaration. The provisions of this section shall not apply to declarations of candidacy filed by a candidate of a political party participating in its first direct primary election subsequent to its qualification as a political party pursuant to the provisions of Section 6430.

### § 6402. Independent nominees

This chapter does not prohibit the independent nomination of candidates under the provisions of Chapter 6 (commencing at Section 6800) of this division, subject to the following limitations:

(a) A candidate whose name has been on the ballot as a candidate of a party at the direct primary and who has been defeated for that party nomination is ineligible for nomination as an independent candidate. He is also ineligible as a candidate named by a party central committee to fill a vacancy on the ballot for a general election.

(b) No person may file nomination papers for a party nomination and an independent nomination for the same office, or for more than one office at the same election.

### § 6430. Qualified parties

A party is qualified to participate in any primary election:

(a) If at the last preceding gubernatorial election there was polled for any one of its candidates for any office voted on throughout the state, at least 2 percent of the entire vote of the state; or

(b) If on or before the 135th day before any primary election, it appears to the Secretary of State, as a result of examining and totaling the statement of voters and their political affiliations transmitted to him by the county clerks, that voters equal in number to at least 1 percent of the entire vote of the state at the last preceding gubernatorial election have declared their intention to affiliate with that party; or

(c) If on or before the 135th day before any primary election, there is filed with the Secretary of State a petition signed by voters, equal in number to at least 10 percent of the entire vote of the state at the last preceding gubernatorial election, declaring that they represent a, proposed party, the name of which shall be stated in the petition, which proposed party those voters desire to have participate in that primary election. This petition shall be circulated, signed, verified and the signatures of the voters on it shall be certified to and transmitted to the Secretary of State by the county clerks substantially as provided for initiative petitions. Each page of the petition shall bear a caption in 18-point blackface type, which caption shall be the name of the proposed party followed by the words "Petition to participate in the primary election." No voters or organization of voters shall assume a party name or designation which is so similar to the name of an existing party as to mislead voters.

### § 6552. Filing fees

The following fees for filing declarations of candidacy shall be paid to the Secretary of State by each candidate:

(a) Two percent of the first-year salary for the office of United States Senator or

for any state office. The fee prescribed in this subdivision does not apply to the office of State Senator or Assemblyman or to an office to be voted for in a district comprising more than one county.

(b) One percent of the first-year salary for the office of Representative in Congress or for any office to be voted for in any district comprising more than one county, except the office of State Senator or Assemblyman.

(c) One percent of the first-year salary for the office of State Senator or Assemblyman.

§ 6555. *Petitions in lieu of filing fees; signatures required; forms*

(a) Notwithstanding any other provision of this article, a candidate may submit a petition containing signatures of registered voters in lieu of a filing fee as follows:

(1) For the office of California State Assembly, 1,500 signatures.

(2) For the office of California State Senate and the United States House of Representatives, 3,000 signatures.

(3) For candidates running for statewide office, 10,000 signatures.

(4) For all other offices for which a filing fee is required, if the number of registered voters in the district in which he seeks nomination is 2,000 or more, a candidate may submit a petition containing four signatures of registered voters for each dollar of the filing fee, or 10 percent of the total of registered voters in the district in which he seeks nomination, whichever is less.

(5) For all other offices for which a filing fee is required, if the number of registered voters in the district in which he seeks nomination is less than 2,000, a candidate may submit a petition containing four signatures of registered voters for each dollar of the filing fee, or 20 percent of the total of registered voters in the district in which he seeks nomination, whichever is less.

(6) Notwithstanding any other provision of this section, a candidate seeking the nomination of a qualified party with

whom he is registered, the registered voters of which were eligible to vote at the last statewide election constituted less than 5 percent of all registered voters eligible to vote at the last statewide election, may submit a petition containing signatures of 10 percent of the registered voters of that party in the district in which he seeks nomination, or 150 signatures, whichever is less.

(b) Each clerk shall furnish to each candidate, upon request, and without charge therefor, forms for securing signatures. Such forms shall be made available commencing 30 days before the first day for circulating nomination papers. No other form except the form furnished by the county clerk shall be used to secure signatures. The substitution of signatures for fees shall be subject to the following provisions:

(1) Any voter registered as affiliated with the same political party as a candidate for whom he is eligible to vote may sign the petition of that candidate, and any registered voter may sign the petition of a candidate, other than a candidate seeking the nomination of his party, for whom he is eligible to vote regardless of political party.

(2) No voter shall at the time of signing a petition in lieu of a filing fee have his named signed to any other petition for any other candidate for the same office, or, in case there is more than one place to be filled in the same office, signed to more petitions for candidates for that office than there are places to be filled.

(3) A candidate may submit the appropriate number of signatures to cover all or any pro rata portion of the filing fee.

(4) Upon receipt of signatures, the clerk shall issue nomination papers provisionally, subject to checking the validity of the signatures against the affidavits of registration on file in his office. In the event that upon checking, the number of valid signatures falls below the number required, the clerk shall notify the candidate of the fact and shall accept any

necessary signatures at any time prior to the close of the period for circulating nomination papers.

(5) If the petition is circulated for an office in more than one county, the candidate shall submit the signatures to the county clerk in the county in which the petition was circulated. The county clerk shall at least two days after verifying the signatures on the petition, notify the Secretary of State of the total number of valid signatures. If the number of signatures is insufficient, the Secretary of State shall notify the candidate and the county clerks of the fact. The candidate may submit the necessary number of valid signatures at any time prior to the close of the period for circulating nomination papers.

(6) Each candidate may submit a greater number of signatures to allow for subsequent losses due to invalidity of some signatures. The clerk shall not be required to determine the validity of a greater number of signatures than that required by this section.

## § 6610. Party nominee

The person who receives the highest number of votes at a primary election as the candidate of a political party for the nomination to an office is the nominee of that party at the ensuing general election.

## INDEPENDENT NOMINATIONS

### § 6800. Scope of chapter

A candidate for any public office, including that of presidential elector, for which no nonpartisan candidate has been nominated or elected at any primary election, may be nominated subsequent to or in lieu of a primary election pursuant to this chapter.

### § 6801. Defeated partisan candidates

A candidate for whom a nomination paper has been filed as a partisan candidate at a primary election, and who is defeated for his party nomination at the primary election, is ineligible for nomination as an independent candidate.

### § 6830. Contents

Each candidate or group of candidates shall file a nomination paper which shall contain:

(a) The name and residence address of each candidate, including the name of the county in which he resides.

(b) A designation of the office for which the candidate or group seeks nomination.

(c) A statement that the candidate is not, and was not at any time during the one year preceding the immediately preceding primary election at which a candidate was nominated for the office mentioned in the nomination paper, registered as affiliated with a political party qualified under the provisions of Section 6430. The statement required by this subdivision shall be omitted when no primary election was held to nominate candidates for the office to which the independent nomination paper is directed.

### § 6831. Signatures required

Nomination papers for a statewide office for which the candidate is to be nominated shall be signed by voters of the state equal to not less in number than 1 percent of the entire number of registered voters of the state at the time of the close of registration prior to the preceding general election. Nomination papers for an office, other than a statewide office, shall be signed by the voters of the area for which the candidate is to be nominated, not less in number than 3 percent of the entire number of registered voters in the area at the time of the close of registration prior to the preceding general election. Nomination papers for Representative in Congress, State Senator or Assemblyman, to be voted for at a special election to fill a vacancy, shall be signed by voters in the district not less in number than 500 or 1 percent of the entire vote cast in the area at the preceding general election, whichever is less, nor more than 1,000.

### § 6833. Time for filing, circulation, and signing

Nomination papers required to be filed with the Secretary of State or with the

county clerk shall be filed not more than 129 nor less than 64 days before the day of the election, but shall be prepared, circulated, signed, verified and left with the county clerk for examination, or for examination and filing, no earlier than 134 days before the election and no later than 5 p. m. 74 days before the election. If the total number of signatures submitted to a county clerk for an office entirely within that county does not equal the number of signatures needed to qualify the candidate, the county clerk shall declare the petition void and is not required to verify the signatures. If the district falls within two or more counties, the county clerk shall within two working days report in writing to the Secretary of State the total number of signatures filed. If the Secretary of State finds that the total number of signatures filed in the district or state is less than the minimum number required to qualify the candidate he shall within one working day notify in writing the counties involved that they need not verify the signatures.

**§ 6834. Signatures; signing for more than one candidate; signer's statement**

Each signer of a nomination paper shall sign but one paper for the same office, except that in case two or more persons are to be elected to the same office at the same election, an elector may sign the nomination papers of as many persons as there are persons to be elected to the office, and such act on the part of an elector shall not be deemed in conflict with the signer's statement prescribed in this chapter.

The signer shall declare his intention to support the candidate for nomination, and shall add his place of residence, giving his street and number, if any.

## AFFIDAVIT OF CANDIDATE

**§ 6920. Contents of affidavit**

Each candidate, at least 74 days prior to the election, shall file with the officer with whom his nomination papers are re-quired to be filed an affidavit which shall state:

(a) His residence, with street and number, if any.

(b) His election precinct.

(c) That he is a voter in the precinct in which he resides.

(d) The name of the office for which he is a candidate.

(e) That he will not withdraw as a candidate before the election.

(f) That, if elected, he will qualify for the office.

(g) The name of a candidate shall not be placed on the ballot unless the affidavit provided for in this section has been properly filed.

## WRITE–IN CANDIDATES

**§ 56. Entitlement to write name of candidate on ballot**

Every voter shall be entitled to write the name of any candidate for any office on the ballot of any election.

**§ 57. Write-in candidates; filing requirements**

Every person who desires to have his or her name as written on the ballots of an election counted for a particular office shall file (1) a declaration stating that he or she is a write-in candidate for the nomination for or election to the particular office and giving the title of that office and (2) the number of signatures required on the nomination paper, if any, required by Sections 6495 and 22836 for that office. The declaration and nomination papers, if any, shall be filed with the clerk, registrar of voters, or district secretary responsible for the conduct of the election no later than the 14th day prior to the election for candidates who require certification by the Secretary of State or the eighth day prior to the election for all candidates not required to be certified by the Secretary of State.

**§ 6495. Number of signers required**

The number of signers to a nomination paper required for the respective offices are as follows:

(a) State office or United States Senate, not less than 65 nor more than 100.

(b) House of Representatives in Congress, State Senate or Assembly, Board of Equalization, or any office voted for in more than one county, and not statewide, not less than 40 nor more than 60.

(c) Candidacy in a single county or any political subdivision of a county, other than State Senate or Assembly, not less than 20 nor more than 30.

(d) When any political party has less than 50 voters in the state or in the county or district in which the election is to be held, one-tenth the number of voters of the party.

(e) When there are less than 150 voters in the county or district in which the election is to be held, not less than 10 nor more than 20.