**Stanford E. ANDRESS,
Plaintiff–Appellant,**

**v.**

**Ann REED, Acting for the State of
California, Defendant–Appellee.**

No. 87–2677.

United States Court of Appeals,
Ninth Circuit.

Submitted June 5, 1989 *.

July 24, 1989.

Stanford E. Andress, Dunsmuir, Cal., in pro per.

David R. Frank, County Counsel, Redding, Cal., for defendant-appellee.

Before SNEED, ALARCON and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

## FACTS

Stanford E. Andress (Andress), the appellant, brought this action against the State of California and Ann Reed (Reed),

---

\* The panel unanimously finds this case suitable for submission on the record and briefs and

without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34–4.

the county clerk and voter registrar for Shasta County, California. Andress alleged his civil rights were violated when Reed denied him certification on the ballot for the office of U.S. Senator from California on the Democratic ticket because he could not afford to pay the $1502 filing fee. In her answer, Reed alleged the affirmative defense that Andress had failed to pursue the statutory alternative provided by California Elections Code § 6555 (West 1977 & Supp.1988) of submitting 10,000 signatures in lieu of paying the filing fee. The parties filed cross motions for summary judgment.

The district court granted Reed's motion for summary judgment and denied Andress's motion. It found legal precedent upholding as reasonable and constitutional California's requirement of 10,000 signatures in lieu of paying a filing fee. On a motion for reconsideration, the court rejected Andress's argument that since signature-gatherers would have to be paid the minimum wage, the requirement that 10,000 signatures be obtained is even more expensive than paying the $1502 filing fee. The court found there is no requirement in the California statute that only paid solicitors may gather the signatures.

The decision of the district court is affirmed.

## STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

## DISCUSSION

Section 6555 of the California Elections Code (West 1977 & Supp.1988) states:

(a) Notwithstanding any other provision of this article, a candidate may submit a petition containing signatures of registered voters in lieu of a filing fee as follows:

. . . .

(3) For candidates running for statewide office, 10,000 signatures.

. . . .

(b) Each clerk shall furnish to each candidate, upon request, and without charge therefor, forms for securing signatures. The number of forms which a clerk shall furnish a candidate shall be a quantity which provides the candidate with spaces for signatures sufficient in number to equal the number of signatures that the candidate is required to secure pursuant to subdivision (a) if the candidate desires that number of forms. However, the clerk may, rather than provide the candidate with the number of forms set forth in the preceding sentence, or upon the request of the candidate, provide the candidate with a master form, which may be duplicated by the candidate at the candidate's expense for the purpose of circulating additional petitions. The Secretary of State shall prescribe the format of the master form. All forms shall be made available commencing 45 days before the first day for circulating nomination papers. . . .

. . . .

(3) In-lieu filing-fee petitions shall be filed at least 15 days prior to the close of the nomination period. Upon receipt of the minimum number of in-lieu filing-fee signatures required, or a sufficient combination of such signatures and pro-rata filing fee, the clerk shall issue nomination papers provisionally

. . . .

Section 6555 was enacted pursuant to a decision of the United States Supreme Court that California could not exclude potentially serious candidates from the ballot simply because they were unable to pay a filing fee. The Supreme Court said: "[W]e hold that in the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay." *Lubin v. Panish,* 415 U.S. 709, 718, 94 S.Ct. 1315,

1321, 39 L.Ed.2d 702 (1974). In *Lubin*, the Court also recognized that certain ballot restrictions are reasonable to forestall frivolous candidacies and concomitant "laundry list" ballots that merely serve to confuse the voter:

> In *Bullock v. Carter*, 405 U.S. 134 [92 S.Ct. 849, 31 L.Ed.2d 92] (1972), we recognized that the State's interest in keeping its ballots within manageable, understandable limits is of the highest order. *Id.*, at 144–45 [92 S.Ct. at 856–57]. The role of the primary election process in California is underscored by its importance as a component of the total electoral process and its special function to assure that fragmentation of voter choice is minimized. That function is served, not frustrated, by a procedure that tends to regulate the filing of frivolous candidates. A procedure inviting or permitting every citizen to present himself to the voters on the ballot without some means of measuring the seriousness of the candidate's desire and motivation would make rational voter choices more difficult because of the size of the ballot and hence would tend to impede the electoral process. That no device can be conjured to eliminate every frivolous candidacy does not undermine the State's effort to eliminate as many such as possible.
>
> That "laundry list" ballots discourage voter participation and confuse and frustrate those who do participate is too obvious to call for extended discussion. The means of testing the seriousness of a given candidacy may be open to debate; the fundamental importance of ballots of reasonable size limited to serious candidates with some prospects of public support is not. Rational results within the framework of our system are not likely to be reached if the ballot for a single office must list a dozen or more aspirants who are relatively unknown or have no prospects of success.

*Lubin*, 415 U.S. at 715–16, 94 S.Ct. at 1319–20 (footnote omitted).

In another opinion, the Court observed that California's requirement that 325,000 signatures be gathered in twenty-four days to nominate independent candidates [1] to the ballot under section 6831 of the California Elections Code (West 1977), standing alone, "would not appear to be an impossible burden." *Storer v. Brown*, 415 U.S. 724, 740, 94 S.Ct. 1274, 1284, 39 L.Ed.2d 714 (1974).

After the *Lubin* and *Storer* decisions, and California's subsequent amendment of its election code so that, starting with the 1976 elections, signatures could be presented as an alternative to payment of a filing fee, the United States District Court for the Northern District of California had occasion to decide if the signature alternative was constitutional. The plaintiff, running as an independent candidate, had alleged a violation of equal protection in that the filing fee constituted wealth and sex discrimination and that the signatures alternative discriminated in favor of party candidates. The district court dismissed the complaint. It found that the "1976 amendments address the concerns of the Supreme Court in *Storer* in a more than adequate fashion. A 5% requirement is changed and reduced to 1%; 24 days are extended to 60 days; restrictions on signers are all but eliminated." *Cross v. Fong Eu*, 430 F.Supp. 1036, 1040 (1977). The court observed that under the amendments an independent candidate could be listed on the 1976 ballot by

> obtaining roughly 100,000 signatures in a two-month period. This is approximately 1,700 signatures a day and could be achieved with only 100 canvassers obtaining 17 signatures each. The California scheme is thus eminently reasonable in view of the state's interest in avoiding a 'laundry list' ballot by requiring prospective independent candidates to demonstrate the seriousness of their candidacy.

---

1. Andress was not attempting to run as an independent candidate, but as a nominee of the Democratic ticket. Consequently, section 6555(a)(3)'s requirement of 10,000 signatures applies to him, not section 6831's requirement of "1% of the entire number of registered voters of the state at the time of the close of registration prior to the preceding general election" for independent candidates.

*Id.* at 1040 (citing *Lubin,* 415 U.S. at 715–16, 94 S.Ct. at 1319–20).

We find, similar to *Cross v. Fong Eu,* that California has a legitimate interest to ensure the seriousness of a candidate for statewide office. One recognized method to gain this assurance is a show of support for the candidate through the signatures of significant numbers of registered voters. *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed. 2d 554 (1971) ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot...") Accordingly, if a requirement of 325,000 signatures in twenty-four days is not an impossible burden, *Storer,* 415 U.S. at 740, 94 S.Ct. at 1284, and collecting 100,000 signatures in sixty days is not unconstitutional, *Cross,* 430 F.Supp. at 1040, then certainly the requirement that Andress collect 10,000 signatures within approximately forty-five days is reasonable and constitutionally adequate. *See also* 60 Op.Cal.Att'y Gen. 114 (1977) (finding a requirement that 10,000 signatures be gathered in 30–55 days for a candidate for statewide office under a prior version of section 6555 is reasonable pursuant to *Storer*).

The district court logically applied the relevant law to the facts of this case. No genuine issues of material fact remain for trial. Andress does not contend he was denied the opportunity to prepare and file the nominating petitions. Further, the California statute does not require that only paid solicitors may gather the signatures.

The district court's decision granting summary judgment for Reed and dismissing Andress's complaint is AFFIRMED.