30 F.3d 138
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
Gerhard LANGGUTH, and his supporters, Appellant,
v.
W.J. MCCUEN, as Secretary of State of the State of Arkansas, Appellee.
 No. 93-3413.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: June 27, 1994.
Filed: August 9, 1994.
 
 Before FAGG, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Gerhard Langguth appeals the district court's[1] decision upholding the constitutionality of Ark. Code Ann. Sec. 7-7-103(c)(2) (1993), disqualifying him from placement on the ballot in the general election as an independent candidate for the United States Senate. We affirm.
 
 
 2
 On the Arkansas filing deadline for independent candidates for statewide office, Langguth submitted a petition, containing approximately 5,000 signatures, to appear on the November 3, 1992 ballot as an independent candidate for the United States Senate. Secretary of State W.J. McCuen rejected the petition as having an insufficient number of signatures, based on section 7-7-103(c)(2). Langguth filed a district court action alleging the statute violated his rights of free speech, association, and equal protection under the First and Fourteenth Amendments of the United States Constitution. He requested injunctive relief to allow his name to appear on the ballot, and a declaratory judgment finding the statute unconstitutional. After a bench trial, the district court dismissed the complaint with prejudice because it believed it was bound by the decision in Rock v. Bryant, 459 F. Supp. 64 (E.D. Ark.), aff'd, 590 F.2d 340 (8th Cir. 1978) (unpublished per curiam).
 
 
 3
 On appeal, Langguth asserts that his case is distinguishable from Rock, and also argues that, since the 1978 Rock decision no independent candidate for statewide office has appeared on the ballot, the petition-filing deadline is earlier, the social fabric of Arkansas (e.g., where people congregate) has changed to make petitioning more difficult, and the Supreme Court has set out a new standard for reviewing ballot-access restrictions.
 
 
 4
 While ballot access restrictions directly affect candidates, not voters, the courts have long recognized the rights of voters and candidates are intertwined, and thus analyze ballot access restrictions as they affect the voter's rights of both free speech and association. See Anderson v. Celebrezze, 460 U.S. 780, 786-88 (1983). Although these rights are fundamental, the State has an interest in regulating elections and may legislatively impose some burdens. Id. at 788.
 
 
 5
 We must weigh the "character and magnitude" of the injury to Langguth's constitutional rights against the state's precise, articulated interest in imposing the regulation, taking into consideration the extent to which those interests make it necessary to burden the constitutional rights. See id. at 789. Because we find this ballot access restriction to be "a burden of some substance" on the right to vote, we apply strict scrutiny and require that the statute be narrowly drawn to serve a compelling state interest. See McLain v. Meier, 851 F.2d 1045, 1049 (8th Cir. 1988). We find that Arkansas's asserted interests-in requiring a candidate to show some support before printing the candidate's name on the ballot, and in having enough time both to certify that the names on the petition are registered voters and to permit the authenticity of the signatures to be challenged in court-are compelling. See Manifold v. Blunt, 863 F.2d 1368, 1374 (8th Cir. 1988) (state has compelling interest in administering election process), cert. denied, 493 U.S. 893 (1989).
 
 
 6
 To survive constitutional scrutiny, the statute's restrictions must be necessary to serve these compelling state interests, and must not go beyond what Arkansas's interests actually require. See id. at 1373. The Arkansas statute requires signatures of the lesser of 3% of the qualified electors of the state or 10,000; signatures must be collected in 60 days; the time period for collecting signatures ends 30 days before the primary and 186 days before the general election. Very few restrictions are placed on voters signing the petitions-they need only be registered voters. Statutes with similar restrictions have been upheld as constitutionally valid. See Storer v. Brown, 415 U.S. 724, 740 (1974) (statute not "impractical" which required signatures of 5% of voters to be collected in 24 days 60 days before election); Jenness v. Fortson, 403 U.S. 431, 432-33 (1971) (statute constitutional requiring signatures of 5% of voters in 180 days); Andress v. Reed, 880 F.2d 239, 241-42 (9th Cir. 1989) (statute constitutional requiring 10,000 signatures to be collected in 45 days); McLain, 851 F.2d at 1050-51 (statute constitutional requiring 7,000 signatures filed 200 days before election with open circulation period).
 
 
 7
 We find that restrictions such as those required by Arkansas's statute appear to be necessary to meet Arkansas's compelling state interests. We do not find the Arkansas statute's requirements facially unreasonable or overly burdensome for a candidate to meet, and Langguth did not present evidence persuading us that they are in practice unreasonable or overly burdensome. We also find that any changes in the Arkansas statute or the effect of the statute since Rock was decided do not make the statute constitutionally defective.
 
 
 8
 To the extent that Langguth asserts on appeal a claim that the Arkansas statute violates the Equal Protection Clause of the Fourteenth Amendment by treating him differently from established political parties, his claim was properly dismissed by the district court. See Jenness, 403 U.S. at 440-41 (appellant did not show it was harder to be independent or nominee of political body than win party primary). Langguth's equal protection claims regarding new political parties or initiated acts or amendments also fail. The Equal Protection Clause does not mandate that Langguth be treated the same as new political parties or initiated acts. Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas