**Howard PHILLIPS, et al., Plaintiffs,**

**v.**

**Ken HECHLER, in his official capacity as Secretary of State for the State of West Virginia, Defendant.**

**No. Civ.A. 6:00–0894.**

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Nov. 3, 2000.

Robert M. Bastress, Jr., Morgantown, WV, for Plaintiffs.

Robert D. Williams, Asst. Atty. General, Charleston, WV, for Defendant.

### MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

On October 19, 2000, and with the consent of the parties, the court consolidated the plaintiffs' motion for preliminary injunction with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). Neither party objected to the consolidation. The plaintiffs submitted the issue on oral argument and brief; the defendant submitted the issue on oral argument. The court **ORDERED** a permanent injunction, which prevented the defendant from refusing to certify the plaintiffs, Phillips and Frazier, as official write-in candidates for the offices of President and Vice President of the United States provided that such plaintiffs filed a certificate of announcement before October 24, 2000. Further, the court **DENIED AS MOOT** plaintiffs' motion

for preliminary injunction. The court now writes to explain its decision.

## I. FACTUAL BACKGROUND

■ On September 22, 2000, plaintiffs, Howard Phillips (hereinafter "Phillips"), J. Curtis Frazier (hereinafter "Frazier"), Rebecca Anderson, Brenda Donnellan, Victoria Forbes, and The Constitution Party filed a complaint for declaratory judgment and injunction accompanied by a motion for preliminary injunction seeking to require the defendant to certify the plaintiffs, Phillips and Frazier, as official write-in candidates for the offices of President and Vice President of the United States. On October 12, 2000, both parties submitted a proposed Agreed Order granting the plaintiffs' motion for preliminary injunction. After considering the memorandum of law supporting the plaintiffs' motion, the proposed Agreed Order, and relevant case law, the court scheduled a hearing on the motion for preliminary injunction for October 19, 2000. At the hearing, the court, with the consent of the parties, consolidated the trial on the merits with the hearing on preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a)(2). Although clear and unambiguous notice typically precedes consolidation, "[a]t times, particularly if the parties consent, . . . consolidation may serve the interests of justice." *Pughsley v. 3750 Lake Shore Drive Coop. Bldg.,* 463 F.2d 1055, 1057 (7th Cir. 1972). The issue before the court was clearly one of law which did not require factual development. Further, the parties agreed that *Dixon v. Maryland State Administrative Board of Election Laws,* 878 F.2d 776 (4th Cir.1989), controlled the outcome of this case. Here, the consent of the parties to consolidate, the agreement of the parties that *Dixon* controlled, the approach of the write-in candidate filing deadline, and the imminent general election persuaded the court to depart from the "clear and unambiguous notice" requirement, typically required before consolidation, and decide the case on the merits. *University of Texas v. Camenisch,*

451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). *See also Singleton v. Anson County Bd. of Educ.,* 387 F.2d 349, 351 (4th Cir.1967) (per curiam) (noting that civil rights cases are especially suitable for consolidation under Rule 65(a)(2)).

In West Virginia, a person seeking to be elected by write-in votes must file a certificate of announcement and pay a filing fee. W.Va.Code § 3–6–4a. Although a filing fee is required for a candidate's certification as an official write-in candidate, indigent candidates may submit four signatures from qualified voters for every dollar of the filing fee as an alternative to paying the filing fee. Candidates for President and Vice President of the United States pay a filing fee equivalent to one percent of the annual salary for that office. W.Va. Code § 3–5–8(a). This year each candidate for this office must pay a $4,000 filing fee or submit 16,000 in-lieu-of-filing fee signatures.

Upon receipt of the certificate of announcement and the requisite filing fee, the Secretary of State certifies the prospective write-in candidate as an official write-in candidate and ultimately sends the candidate's name to the clerk of the circuit court for the appropriate counties. The Secretary of State cannot receive a certificate of announcement if the filing fee has not been paid. W.Va.Code § 3–5–8(f). Because only write-in votes cast for official write-in candidates are counted and tallied, write-in votes for any person other than an official write-in candidate are disregarded. W.Va.Code §§ 3–4–24(c)(2), 3–4a–27(c)(2), 3–6–4a(e) and 3–6–6(b)(2).

Plaintiffs Phillips and Frazier do not claim that they are indigent and therefore eligible for the alternative to the filing fee provided in West Virginia Code § 3–5–8a. As a result, plaintiffs Phillips and Frazier must pay $4,000 to be certified as official write-in candidates. Phillips and Frazier claim that the burden imposed by requiring presidential candidates to pay a filing fee equal to one percent of the President's

annual salary violates the rights of Phillips, Frazier, and the Constitution Party as guaranteed to each of them by 42 U.S.C. § 1983, by the First and Fourteenth Amendments to the United States Constitution and by Article III, §§ 3, 7, 10, and 16 of the West Virginia Constitution. Further, plaintiffs claim West Virginia's refusal to recognize as an official write-in candidate any write-in candidate who does not pay the filing fee and its corresponding refusals to post the candidate's name, to certify him as a candidate, and to tabulate and report votes cast for him violates the rights of Phillips, Frazier, and the Constitution Party under 42 U.S.C. § 1983, under the First and Fourteenth Amendments to the United States Constitution and under Article III, §§ 3, 7, 10, and 16 of the West Virginia Constitution. Finally, plaintiffs claim that by precluding the tabulation and reporting of write-in votes cast for presidential candidates who have not paid the filing fee, these statutes violate the rights of plaintiffs Anderson, Donnellan, and Forbes guaranteed to them by 42 U.S.C. § 1983, by the First and Fourteenth Amendments to the United States Constitution, and by Article IV, § 1 of the West Virginia Constitution. Plaintiffs seek a preliminary injunction, permanent injunction, declaratory judgment, costs and reasonable attorney's fees, and any other relief the court deems appropriate.

## II. CONSTITUTIONALITY OF WEST VIRGINIA ELECTION LAW

### A. STANDARD

In *Dixon v. Maryland State Administrative Board of Election Laws*, 878 F.2d 776 (4th Cir.1989), the United States Court of Appeals for the Fourth Circuit held that Maryland's write-in candidate filing fee was unconstitutional and that Maryland could not condition the reporting of the results of write-in voting on candidate certification, whether or not accompanied by a fee. *See Dixon*, 878 F.2d at 786. Under Maryland law, non-indigent write-in candidates were required to file certificates of

candidacy and pay a filing fee. If a write-in candidate failed to comply with the requirements, votes cast for that candidate were not reported. *See Dixon*, 878 F.2d at 777.

The *Dixon* court relied on standards articulated in *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) and *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) to decide the constitutionality of the Maryland election laws at issue. *See Dixon*, 878 F.2d at 780. In *Anderson*, the Supreme Court provided the following analysis for gauging the constitutionality of restrictions on candidacy:

> Constitutional challenges to specific provisions of a State's election laws ... cannot be resolved by an "litmus-paper test" that will separate valid from invalid restrictions. ... Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Dixon* at 780 (quoting *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564). The Supreme Court in *Eu* went further and held that when a state election law directly infringes on First Amendment freedom of speech and association rights, the law can "only survive constitutional scrutiny if it serve[s] a compelling governmental interest ...

and [is] narrowly tailored to serve that interest." *Dixon,* 878 F.2d at 780 (quoting *Eu,* 489 U.S. at 222, 109 S.Ct. 1013).

*Dixon* addressed two distinct issues: write-in candidate certification and write-in vote tabulation and publication. Maryland statutes required write-in candidates to pay a filing fee to become certified and be declared official. The state asserted that the filing fee helped defray costs and helped assure that only serious candidates were accorded official status. *See Dixon,* 878 F.2d at 783. The *Dixon* court held that the first asserted interest, defraying costs, did not sustain the challenged filing fee requirement because the defendant had not shown a correlation between the fee charged and a particular election expense. *See Dixon,* 878 F.2d at 783–84. Further, the *Dixon* court held that charging a filing fee was not a sufficiently narrowly drawn method of advancing the state's second asserted interest, preventing frivolous candidates, in light of the burden this method imposed on the rights of association. *See Dixon,* 878 F.2d at 784. The court concluded that a filing fee may be constitutionally permissible as a prerequisite for certifying candidates, but there must be a correlation between the fee charged and a particular election expense. *See Dixon,* 878 F.2d at 783, 785. However, the court concluded that Maryland could not make the payment of a filing fee a condition of reporting write-in votes. *See Dixon,* 878 F.2d at 785. In fact, the court could "conceive of no basis whatsoever for conditioning the reporting of write-in votes either on payment of such a fee or on certification of candidates." *Dixon,* 878 F.2d at 785.

A number of cases involving ballot-access candidates have upheld as constitutional certain filing fees and alternatives to filing fees that were required by state election laws.[1] However, the statute the Fourth Circuit held unconstitutional in *Dixon* required filing fees from write-in candidates seeking certification. Because *Dixon* involved write-in candidates, it is distinguishable from the line of cases involving ballot-access candidates, and the Fourth Circuit's analysis in that case is instructive to this court. In both ballot-access and write-in candidate cases, the balancing test articulated in *Anderson* applies. However, because the state interest in regulating write-in candidates is different than the state interest in regulating ballot-access candidates, the results differ between the two lines of cases.

Ballot-access candidates are those candidates whose names appear on the ballot. Write-in candidates are not listed on the ballot. States requiring a filing fee for ballot-access candidates typically justify the fee as a means to insure the seriousness of the candidacy so that frivolous candidates do not clog the ballot and create voter confusion. These problems are not found in situations involving write-in candidates. In *Lubin v. Panish,* 415 U.S. 709, 718–19, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974), the Supreme Court noted that a state has an interest in "protecting the integrity of the electoral system from the recognized dangers of ballots listing so many candidates as to undermine the pro-

---

1. *See Andress v. Reed,* 880 F.2d 239, 242 (9th Cir.1989) (holding California statute requiring candidate for statewide office to collect 10,-000 signatures as alternative to paying filing fee reasonable and constitutionally adequate); *Storer v. Brown,* 415 U.S. 724, 740, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) (finding requirement of 325,000 signatures in twenty-four days not impossible burden); *Cross v. Fong Eu,* 430 F.Supp. 1036, 1040 (E.D.Cal.1977) (collecting 100,000 signatures in sixty days not unconstitutional). *See also Socialist Workers Party v. Hechler,* 890 F.2d 1303, 1307 (4th Cir.1989) (holding constitutional West Virginia Code section permitting use of signatures by indigent candidates to substitute for filing fee requirement); *Socialist Workers Party v. Hechler,* 696 F.Supp. 190 (S.D.W.Va. 1988), *rev'd on other grounds,* 890 F.2d 1303 (4th Cir.1989), (applying *Anderson* balancing test, district court found that number of signatures required by statute imposed only modest burden, especially in light of in-lieu-of-filing-fee schemes of other states which had been upheld).

cess of giving expression to the will of the majority." *Lubin*, 415 U.S. at 714, 94 S.Ct. 1315. The state's interest in preventing long lists of candidates on the ballot does not apply to write-in candidates. Because the instant case involves write-in candidates, the court finds that the reasoning in *Anderson* and *Dixon* guide the court in the instant case.

Moreover, both parties agree that the reasoning in *Dixon* applies in this case. Counsel for the defendant stated that "it is difficult for [the defendant] to distinguish [the West Virginia fee] from the fee that was at issue in the *Dixon* case." The Maryland Election Code provisions at issue in *Dixon* required a write-in candidate to file a certificate of candidacy for election and pay a filing fee equal to that required of a ballot-access candidate seeking nomination for the same office. *See Dixon*, 878 F.2d at 778 n. 1. The West Virginia Code provisions at issue in the present case require a write-in candidate to file a certificate of announcement and either pay the filing fee required of all candidates for that office or submit in-lieu-of-filing fee petitions.[2] Under the Maryland Code sections at issue in *Dixon* and the West Virginia Code sections at issue in the present case, the reporting of write-in votes is conditioned on the submission of certificates and filing fees.

## B. APPLICATION

■ The first prong of the *Anderson* balancing test requires the court to assess "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiffs[s] seek[ ] to vindicate." *Dixon*, 878 F.2d at 780 (quoting *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564). In the present case, the plaintiffs claim that the filing fee, equal to one percent of the President's salary, imposes an unwarranted burden on the plaintiffs. The plaintiffs also claim that West Virginia's refusal to recognize as official write-in candidates any write-in candidate who does not pay the filing fee and refusal to certify the candidate and tabulate and report votes cast for the candidate imposes severe burdens on the plaintiffs' electoral participation and on associational freedoms. Finally, the plaintiffs claim that precluding the tabulation and reporting of write-in votes cast for Presidential candidates who have not paid the filing fee violates the plaintiffs' right to vote.

The plaintiffs in the present case assert essentially the same injuries the plaintiffs in *Dixon* asserted.[3] The court in *Dixon* stated that although a fee requirement may be charged as a condition for certification of a write-in candidate, that fee must comply with constitutional requirements. *See Dixon*, 878 F.2d at 785. In the present case, the fee is $4,000. Whether a filing fee is a legitimate means of defraying costs turns on "the precise nature of the particular expense ostensibly covered by the fee." *See Dixon*, 878 F.2d at 783. In the present case, the defendant failed to articulate a correlation between the fee charged to write-in candidates and any particular election expense. *See Dixon*, 878 F.2d at 783.[4] The defendant has

---

2. Under the Maryland Code, indigent candidates qualify for a waiver of the filing fee. Under the West Virginia Code, indigent candidates can file in-lieu-of-filing-fee petition signatures. In both *Dixon* and the present case, the plaintiffs did not qualify for these filing fee alternatives.

3. In *Dixon*, the plaintiffs asserted two injuries. First, the plaintiffs asserted that the requirement of a fee to gain official status denies candidates an equal opportunity to win votes and interferes with voters' rights to associate

to advance political beliefs. Second, plaintiffs argued that a voter's right to vote as he chooses is constrained if only votes cast for certified candidates are reported. *Dixon v. Maryland State Admin. Bd. of Election Laws*, 878 F.2d 776, 780 (4th Cir.1989).

4. The *Dixon* court noted that "Maryland charges candidates both on and off the ballot—and, for that matter, both those who have participated in primaries and those who have not—the same fee." *Dixon*, 878 F.2d at 783.

not shown that the administrative expenses related to a write-in candidate warrant a $4,000 fee.[5] In addition, under the West Virginia statutes at issue in this case, the filing fee for a ballot-access candidate is not different than the fee required from a write-in candidate. Moreover, because the filing fee does not prevent wealthy frivolous candidates, the fee does not seem to be an appropriate means of preventing frivolous or fraudulent candidates. *See Dixon,* 878 F.2d at 784. The court finds that although a filing fee that comports with constitutional requirements may be required to certify a candidate, the filing fee in this case is unconstitutional. The interest asserted by the defendant in defraying costs and preventing frivolous candidacies is insufficient to justify the burden imposed on the plaintiffs' First and Fourteenth Amendment rights.

The West Virginia filing fee requirement severely burdens candidates' First and Fourteenth Amendment rights and is in no way narrowly drawn to advance a state interest of compelling importance.[6] The state interests that justify the imposition of a filing fee are not as applicable in situations involving write-in candidates as they are in situations involving ballot-access candidates. Differences in the state's interest justifying the burdens imposed by a regulation affect the *Anderson* balancing test. Restrictions on a candidate's ability to become an official write-in candidate affect that candidate's First and Fourteenth Amendment rights. This court finds that given the similarities between the Maryland and West Virginia election laws and the ruling of the Fourth Circuit in *Dixon* regarding the constitutionality of the Maryland laws,[7] the West Virginia code sections requiring a write-in candidate to pay a filing fee to become an official write-in candidate are unconstitutional.

The Court therefore **DECLARED** unconstitutional West Virginia Code § 3–6–4a, which requires a write-in candidate to pay a filing fee as a condition for certification as an official write-in candidate. As a result, the court **GRANTED** plaintiff's motion for declaratory judgment and issued a **PERMANENT INJUNCTION** enjoining the defendant from refusing to certify plaintiffs, Phillips and Frazier, as official write-in candidates for the offices of President and Vice President of the United

---

**5.** Counsel for plaintiff pointed out at oral argument that if a presidential candidate had to pay a $4,000 fee in every state, such candidate would pay $200,000 in fees. The Constitution Party's national budget is $300,000.

**6.** In *Fishbeck v. Hechler,* 85 F.3d 162 (4th Cir.1996), the Fourth Circuit relied on the following standard to review a challenge to a state election law:

> [T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." [*Norman v. Reed,* 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992)] But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon First and Fourteenth Amendment rights of voters, "the State's

> important regulatory interests are generally sufficient to justify" the restrictions. [*Anderson,* 460 U.S. at 788, 103 S.Ct. 1564].

*Id.* at 164 (quoting *Burdick v. Takushi,* 504 U.S. 428, 432–36, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)).

**7.** According to *Dixon,* no basis exists for conditioning the reporting of write-in votes on payment of a filing fee or on certification of candidates. In the present case, the plaintiffs do not dispute conditioning the reporting of write-in votes on the filing of a certificate of announcement. Counsel for the plaintiffs stated that filing a certificate of announcement addressed the state interest of preventing frivolous candidates. Moreover, *Burdick v. Takushi,* 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992), appears to reign in *Dixon*'s language on this point. Because the plaintiffs do not challenge this provision, the court will not address whether *Burdick* affects the portion of *Dixon*'s holding regarding the reporting of write-in votes regardless of a candidate's certification.

States provided that such plaintiffs filed a certificate of announcement before October 24, 2000. Further, the court **DENIED AS MOOT** the plaintiff's motion for preliminary injunction. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.